UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH P. GASKIN,

Plaintiff,

v.

Civil Action No. 06-12193
Judge Avern Cohn

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

**MEMORANDUM AND ORDER**
**ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

This is a social security case. Plaintiff Keith P. Gaskin (Gaskin) appeals from the final decision of the Commissioner of Social Security (Commissioner) denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). An Administrative Law Judge (ALJ) conducted a hearing and determined that Gaskin was not entitled to benefits. The Appeals Council denied review of the ALJ's decision.

Gaskin filed for judicial review under 42 U.S.C. § 405(g). Gaskin and the Commissioner filed motions for summary judgment, and the matter was referred to a magistrate judge to consider the motions. On September 28, 2006 the magistrate judge issued a report and recommendation (MJRR) that the ALJ's decision be affirmed. Gaskin objects to the recommendation. Specifically, Gaskin contends that the ALJ

failed to give proper weight to the opinions and assessments expressed by his treating physician and argues that the ALJ substituted his medical judgment for that of the physicians of record. The Commissioner says that the magistrate judge was correct in concluding that substantial evidence supports the ALJ's decision, and asks the Court to adopt the MJRR. For the reasons that follow, the Court adopts the MJRR, and GRANTS summary judgment in favor of the Commissioner.

## II. Factual Background and Procedural History

Gaskin filed for social security benefits on June 23, 2003. He was 36 years old at the time. He has a high school equivalence diploma (GED) and has worked as a cook, mail handler, laborer, machine operator, and press operator. He has not engaged in substantial gainful activity since May 15, 2002.

Gaskin injured his back at work while he was lifting heavy parts as a machine operator on January 11, 2002. An electromyography (EMG) of the lower extremities on May 9, 2002 was indicative of early L4-5 radiculopathy. Magnetic resonance imaging (MRI) of the lumbar spine on August 13, 2002, showed degenerative hydration of the L4-5 disc and a disc herniation at L4-5, as well as a disc bulge at L5-S1. Gaskin filed an application for DIB and SSI on June 23, 2003. The Social Security Administration (SSA) denied Gaskin's application on October 10, 2003. Gaskin then requested a hearing before an ALJ, which was held on September 6, 2005. The ALJ issued a decision denying Gaskin's claim on January 9, 2006. The ALJ determined that while Gaskin suffered from lumbar strain and that his impairment was "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), he did not have an impairment that met or medically equaled any of the impairments listed in Appendix 1,

Subpart P of the Social Security Regulations. The ALJ further determined that Gaskin could not perform any of his past relevant work, but that he retained the ability to perform a range of "light" work and that there were a significant number of light jobs in the national economy that he could perform. Accordingly, the ALJ found that Gaskin was not "disabled" within the meaning of the Social Security Act.

The magistrate judge agreed with the ALJ's decision. The magistrate judge stated that, "faced with conflicting evidence regarding the nature and severity of Gaskin's condition, the ALJ thoroughly reviewed the record and reasonably resolved the conflicts in the evidence determining that Gaskin was capable of light and sedentary work." The magistrate judge also found that the Vocational Expert's (VE) testimony in response to a hypothetical posed by the ALJ was significant. The VE identified a substantial number of both light and sedentary jobs that a person with Gaskin's vocational profile and residual functional capacity (RFC) could perform. The magistrate judge concluded that the ALJ's decision was based upon substantial evidence.

**III. Standard of Review**

Judicial review of a Social Security disability benefits application is limited to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. Brainard v. Sec'y of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The

substantiality of the evidence must be based upon the record taken as a whole. Futernick v. Richardson, 484 F.2d 647, 649 (6th Cir. 1973). "[T]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). The portions of the MJRR that the claimant finds objectionable are reviewed de novo. See 28 U.S.C. § 636(b)(1)(C); Smith v. Detroit Fed'n of Teachers, Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987)

## IV. Analysis

### A. The Legal Standard

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). See also, 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). See also, 42 U.S.C. § 423(d)(2)(A).

A five-step process is used to evaluate both DIB and SSI claims. 20 C.F.R. §§ 404.1520, 416.920. First, "[t]he claimant must show that she is not engaged in substantial gainful activity." Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001)(internal quotations omitted). Second, "[t]he claimant must demonstrate that she has a severe impairment." Id. Third, the claimant must demonstrate that her impairment "meets the durational requirement and meets or equals a listed impairment." Id. Fourth, if the impairment does not meet or equal a listed impairment, the claimant must prove "that she is incapable of performing work that she has done in the past." Id. Fifth, "if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed." Id.

**B. The Parties' Arguments**

Gaskin objects to the ALJ's determination that he retains the capacity to perform light work in spite of his severe back impairment. The ALJ determined that Gaskin "has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 4 hours in an 8-hour workday, sit 4 hours in an 8-hour workday with a sit/stand option, and occasional climbing, balancing, stooping, kneeling, crouching, and crawling." Gaskin says that the ALJ erred in reaching this conclusion because he rejected the opinion of Gaskin's treating phyisican, Dr. Robert Brown. Gaskin contends that the Commissioner is bound by a treating source opinion when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(d) and 416.927(d). Gaskin says that Dr. Brown concluded that he was unable to work due to his back injury as May, 2002 in eleven separate documents.

Second, Gaskin agues that he presented substantial evidence that he is disabled because his claim fits within the parameters of Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986). Duncan explains that first, there must be objective medical evidence of an underlying medical condition; and second, there must be either (1) objective medical evidence which confirms the severity of the alleged pain arising from the condition; or (2) the objectively established medical condition must be of such severity that it can reasonably be expected to produce the alleged disabling pain. Id. at 53.

Gaskin argues that he fulfills these requirement because he presented objective evidence of an underlying condition. In particular, he says that on August 23, 2004 he underwent a consultative examination by Dr. A. Pennington who noted that Gaskin walked with an antalgic gait with the use of a cane; was unable to squat or arise from a squatting position; only able to partially stoop; was unable to walk on his heels and toes; was unable to perform a tandem gait; and was limited in his ability to bend forward. Gaskin also points to the report that his MRIs indicated the presence of a herniated disc and the EMG testing which demonstrated low grade L4-L5 root irritability. Gaskin argues that even the magistrate judge recognized that he presented objective medical evidence to confirm the severity of the alleged pain when she then she stated that, "[Gaskin] has a back impairment that might be reasonably be expected to result in pain and limitations."

The Commissioner argues that the objective medical diagnostic and clinical findings in the record do not support Dr. Brown's opinion that Gaskin has a disability. Therefore, the ALJ's rejection of Dr. Brown's opinion was reasonable. The

Commissioner states that regulations and case law recognize that the opinion of a physician, including a treating physician is entitled to great weight only if it is supported by adequate medical data, including medical signs, and laboratory findings, and does not conflict with other evidence. 20 C.F.R. §§ 404.1527(d)(2)(3)(4), 416.927(d)(2)(3)(4); Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir. 1997). Here, the ALJ discounted Dr. Brown's statements that Gaskin was unable to work because they are not accompanied by any objective clinical findings and are inconsistent with Dr. Brown's own treatment notes. In particular, the ALJ noted that Dr. Brown's treatment notes show "tenderness in the lumbar area and some spasm, but intact motor sensory, vibratory, gait and deep tendon reflexes." The ALJ determined that these symptoms did not support Dr. Brown's opinion that Gaskin has a herniated lumbar disc and is unable to sit, stand, or deal with a combination of the two positions for any period of time.

Next, the Commissioner argues that there is substantial evidence in the record "that cuts against a finding of disability." For example, Gaskin was referred to Dr. R.E. Olson for a neurosurgical consultation on September 4, 2002. Dr. Olson, reviewed Gaskin's MRI scan and opined that while the L4-5 disc was degenerated and bulging backwards, it was not herniated. Furthermore, Dr. Olson felt that Gaskin's statements as to the location where he experienced pain did not correlate with the MRI findings.

Another physician, Dr. Babu Lal Nahata, also performed a consultative examination of Gaskin on October 27, 2005, at the request of Disability Determination Services (DDS). Dr. Nahata stated that Gaskin's herniated disc and radiculopathy had resolved, but that Gaskin still experienced ongoing chronic back pain due to lumbar

strain and spasm. Dr. Nahata further observed that Gaskin was not in any acute distress,;that he had normal motion of the extremities, and bilateral straight leg raising ranged from reduced to normal.

The Commissioner also points out that during most examinations, Gaskin had a normal gait and normal coordination, could walk on his heels and toes, could rise from a squat, and most examinations revealed normal reflexes and sensation. Although, some examinations revealed reduced lumbar motion, Dr. Brown never noted reduced motion in his progress notes. Furthermore, the Commissioner states that the nerve conduction studies of the lower extremities were normal and EMG studies showed only early L4-5 radiculopathy. In addition, there was no atrophy in the lower extremities and strength in the lower extremities was normal or close to normal.

## IV. Conclusion

A review of the record reveals that the testimony and the record taken as a whole support the conclusions that the ALJ's determination was based upon substantial evidence.

An ALJ is not bound by a treating physician's opinion that a claimant is "disabled" or "unable to work." The regulations provide that the such a statement does not constitute a "medical opinion" because whether a claimant is disabled is a dispositive issue reserved for the Commissioner. 20 C.F.R. § 404.1527(a)(2) (e)(1). The ALJ acknowledged Dr. Brown's statements that Gaskin was unable to work and reasonably rejected them on the grounds that they were not supported by objective and clinical findings and were inconsistent with his own treatment notes showing normal neurological functioning.

The ALJ conducted a thorough review of the record and concluded that Gaskin remained capable of performing light and sedentary work. The ALJ did not substitute his own medical judgment for that of the physicians of record. There was substantial evidence to support the conclusion that Gaskin was capable of working. This evidence includes neurologist Dr. Olson's findings, Dr. Nahata's findings, and the testimony of the Vocational Expert.

For the reasons discussed above, the Court adopts the findings and conclusions of the MJRR that the ALJ's decision is supported by substantial evidence. Gaskin's motion for summary judgment is DENIED; the Commissioner's motion for summary judgment is GRANTED. The case is DISMISSED.

SO ORDERED.

s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: December 1, 2006

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 1, 2006, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5160